Ewing, C. J.
A bill- of exceptions was taken by the defendant below, to the charge given by the Court of Common Pleas of the county of Bergen. The action was in trover, for a bond alleged to be the property of the plaintiffs, and said to have been made by the defendant, Folly, to one of the plaintiffs, before her coverture. The case depended, as appears from the bill of exceptions, on the question of the delivery of the bond.
The counsel of the plaintiff in error, on the argument, objected to the charge; that the court had been required to state to the jury what constituted a legal delivery, and had omitted to do so. Upon looking into the bill of exceptions, however, it appears the court was not called on generally to explain or state to the jury in what a legal delivery consisted, but a specific proposition was propounded, and the court was asked so to state the law to the jury. “The defendant, by his counsel, prayed the court to charge the jury on the following point, to wit: that a bond was not *198 *157] legally *delivered, unless it was actually delivered to the obligee or some other person in trust, and that other person a different person from the obligor.” .And the court was not requested to charge the jury on any other point in the cause. Now the proposition thus propounded was not correct. There are other modes, as will be hereafter shewn, whereby a legal delivery may be effected, without an actual tradition or handing over by the ■ obligor to the obligee, or some other person in trust for him. It was therefore no error in the court to decline giving such a charge. Let us then examine the charge which was given, and see whether there be in it anything illegal or erroneous. The court charged the jury, that “ a delivery of a bond was necessary to maintain the action, but whether the bond in this case was delivered or not, was a question of fact for the jury to decide; if they were of opinion that the bond was not ■delivered, then they ought to find for the defendant; if they were of opinion that the bond was executed and delivered, then they ought to find for the plaintiffs.” It may be, that a more full, explanatory and satisfactory charge, might have been given. So far, however, as it extends, what it does contain, is' true and correct. Whether any charge shall be given, or how full and explicit it shall be, are subjects on which the court may exercise a sound discretion; and the omission to give any charge, or the omission to state some legal principle which may be applicable to the case, where the attention of the jury has not been improperly directed, is no ground of complaint on a writ oí error. Calbreath v. Gracy, 1 Wash. Cir. Co. Rep. 198. If in the opinion of counsel, a charge on particular legal points is necessary, such charge may be required, and its omission, or the manner of its performance may then become the subject of investigation. And, if the court state any matter to the jury, without being so requested by counsel, exception may be taken to it.' But unless the court charge erroneously, or, being legally required, omit or refuse to charge at all, or on *199 some particular point, tliere is no room for exception. In the case before us, according to these principles, I am of opinion there is no error in the charge of the court.
For the decision of the case before us it is not necessary to say more; but as the question on the proof of the delivery of the bond was very fully argued, it may perhaps be more satisfactory to express an opinion on the point. Was there sufficient evidence to * warrant the jury in finding a [*158 delivery of the bond ? The jury having found the delivery, is there evidence to sustain the verdict ?
Jacob Bamper testified, that he drew the bond, which he described; that he saw it executed by the defendant. After the defendant executed it, he held it out in his hand, and said to Mary, one of the plaintiffs, the obligee named in it, “ Here is your bond, what shall 1 do with it ? The -witness could not recollect the answer Mary made, but the defendant answered, I will take care of it for you. The bond was endorsed as Mary’s bond, and handed by the defendant to his wife, who put it up in the defendant’s trunk, at his request; that he also then drew a will for hirn; that it was about fourteen or fifteen years ago ; that he forgets who was by, and did not know whether the bond was delivered then or not; that the defendant said the bond was for the use of his daughter; that his daughter was in and out at the time, and lived in the house, but lie did not recollect whether she talked to the defendant; that as soon as the bond and -will were executed, they were locked up in a desk by the defendant’s wile, and cannot say whether Mary was present.”
On the argument some remarks were made towards the discredit of Bamper. The jury, however, have confided in him, and that' subject is by the verdict closed against enquiry.
Tliere is no precise or set form in which a delivery must be made. A deed may be delivered by words without acts; or by acts without words ; or by both acts and words. Shep. Touch. 58. After the writing has been signed and sealed, *200 an intent, coupled with acts or words evincing such intent, to consummate and complete it, and to part absolutely and unconditionally with it and the right over it, is sufficient to give it legal existence as a deed. In Shelton’s case, Cro. Eliz. 7, the grantor sealed the deed, in the presence of the grantee and of other persons, and it was at the same time read, but not delivered, nor did the grantee take it away, but it was left behind them in the same place, yet by the opinion of all the justices it was held a good grant, for the parties came for that purpose, and performed all that was requisite for the perfecting it except the actual delivery; but it being left behind them, and not countermanded, was said to be a delivery in law. In Hollingworth v. Ascue, Cro. Eliz. 356, if was said by Anderson, Oh. Just. “ A delivery may be without words of delivery, as it hath been adjudged that one made a release and cast it upon the table, *159] *and said “this will serve’’ this is a good delivery. Shephard says, Touch. 58, “ If I take the deed in my hand, and use these or the like words, Here take it. or, this will serve, or, I deliver this as my deed, or, I deliver it to you, these are good deliveries.” Lord Coke says, Co. Lit. 36, a, a deed may be delivered by words “ without any act of delivery, as if the writing sealed lies upon the table, and the feoffor or obligor says to the feoffee or obligee, ' Take up said writing, it is sufficient for you,’ or ‘ it will serve the turn,’ it is a sufficient delivery.” In Goodright v. Strahan, Cowp. 201, where a deed, in nature of a mortgage, was made by a husband and wife, of the wife’s lands, which, by reason of the coverture, was admitted to be void as te the wife, yet facts, after the decease of the husband, amounting to an acknowledgment by the wife that the deed was hers, and that the party should enjoy according to the terms of it, were held to be equivalent to a redelivery. In Goodrich v. Walker, 1 John, cases 253, the Supreme Court of New York said, “ A formal delivery is not essential, if there be any act evincing the intent.” In the case before us, the *201 obligor, after having signed and sealed the bond, holding it up in his hand, addressed the obligee, “ Here is your bond.” Words evincing and acknowledging a delivery as strongly as any which could be selected. As if he had said, “ This instrument is now complete. It has become a bond. It is now your property. ‘ What shall I do with it ?’ It is now absolute. It is under your control. I have no longer any authority over it. Direct, where it shall be placed, and by whom preserved, for your benefit.” The obligee said something, not recollected nor proved, and the defendant added, “ I will take care of it for you.” I will take care of it, not until some stipulation or condition is performed, not until certain circumstances occur which may induce me to give it legal efficacy ; but “for you,” absolutely, unconditionally, as your property, in the character of your agent and fiduciary. It may be said, that in the cases which I have cited the deed, in some mode more or less direct, came into the hands of the person to whom it was made, and was produced by him. T do not apprehend that any substantial difference in principle results from this consideration. In the cases whore the deed was left on the table, or cast on the table, there was no actual delivery to the grantee, or to any person for him. Tho essence of the whole consisted in the intent of the grantor or obligor *to perfect the [*160 instrument, and to make it at once the absolute property of the grantee or obligee, and the acts and declarations are, in truth, the evidence of such intent. Such was the clear intention and tho plain avowal, in tho present instance, of the defendant. The' validity of the bond, if once by apt delivery it had legal existence, cannot be destroyed by the fact of her placing or leaving it in the hands of the obligor for safo keeping. The prudence of such a measure, or the presumption which might arise in tho absence of any evidence of delivery, are other considerations. Moreover, in examining this subject it should not be overlooked, that the matters contained in the bill of exceptions are not to be *202 scanned like the facts stated in a special verdict. They are the matters given in evidence to a jury — from which they were authorized to draw all just inferences and presumptions.
There is then enough in the evidence to warrant the jury in the belief that the bond was legally delivered, and to sustain the verdict.
On the argument was mentioned the case of Den on the demise of Gibbs v. Shaver, tried before me at the Sussex May Circuit, 1825, in which a deed was overruled. Being a nisi prius decision, it can deserve no weight here, and I should not notice it, except for the single purpose of distinctly stating the circumstances. The deed on that occasion offered and overruled, had been signed and sealed by the grantor,-and then taken and retained by him during his lifetime. He not only had not delivered it directly or indirectly, by himself or another, to the grantee, or to any person for her, but avowed his intention when he signed it, not to deliver it in his lifetime. In the certificate of acknowledgment by the grantor, the word “ delivered ” was omitted, and the reason of the omission was stated by the judge who had taken the acknowledgment, to be, because the grantor had not delivered it, and did not intend in his lifetime to deliver it.
In my opinion the judgment of the Court of Common Pleas of Bergen should be affirmed.
Ford, J. Peter Vantuyl and Mary,
his wife, who were plaintiffs in the court below, declared against the defendant, William Polly, who was the father of Mary, in trover for a bond of fifty pounds, which the husband and wife alleged to have been made and delivered by the father to his daughter *161] Mary, prior to her *being married to Yantuyl, but which he now refused to deliver up to the husband and wife on request. The signing and sealing of the bond seem not to have been contested between the parties at the trial. The sum was part of seventy pounds, for which Hans Yan *203 Blarcom liad given his bond to Mr. Folly, in consideration that his son was the putative father of a child by Mr. Folly’s daughter Mary, anterior to her marriage with Yantuyl. The main dispute was whether Mr. Folly had ever delivered the bond to his daughter, and what constitutes a delivery in law. Jacob Bamper testified, that he drew up the bond from Mr. Folly to his daughter, in the usual penalty, conditioned to pay her fifty pounds, and saw him sign and seal it; he then saw him hold out the bond towards his daughter, and say to her “ Mary, here is your bond, what I shall do with it?” He did not recollect what answer Mary made; but Mr. Folly added, “ I will take care of it for you.” It was then endorsed as Mary’s bond, and Mr. Folly handed it to his wife, who put it up in her husband’s trunk, at his request. Upon the evidence thus given there was a motion for a non suit, on the ground that it did not amount to proof of a delivery; but the motion was refused. The defendant’s counsel then asked the court to charge the jury, that a delivery, in order to be legal, must be made to the obligee, or to some person in trust for the obligee, which person could never be the obligor himself or his wife. The court charged the jury that a delivery of the bond was necessary to be proved, in order to maintain the action; that if they considered it not proved, they would find for the defendant, otherwise for the plaintiffs. The counsel for the defendant took a bill of exceptions to this charge, because it did not explain what was, or was not, a legal delivery. How, the single question in this case was, whether the bond was delivered to Mary herself; it was considered by the court to be the simple point and the only one; for as to the idea of the obligor making the delivery to himself or his wife, they neither approved, nor so much as gave it countenance, in their charge. The delivery was not made to Bamper the witness; that was not even pretended; and it eould not be made to any other person present at the time but Mary herself. It could neither be made to the *204 obligor nor to his toife. Delivery means the surrender of something to another person, and therefore excludes the idea of a man’s surrendering to himself. He would have no act to perform. It equally excludes the idea of a man’s sur*162] rendering to his toife; for *husband and wife are one person in law, and cannot act in the opposite characters of giver and receiver. By the husband’s appointment a wife may deliver a deed for her husband, or receive one for him, because in so doing she acts consistently with the relationship between husband and wife, who are allowed to act for, but never against each other as separate parties. Hence a delivery of the bond could not have been made to any person then present but Mary herself; and whether it was, or was not, delivered to her, was the simple point.put to the jury. And if they credited the testimony of Bamper, as undoubtedly they must have done, they certainly did right, both as to matter of fact and matter of law. They could not find indeed that the instrument of, writing was delivered into Mary’s hand, nor was that necessary. Delivery may be consummated by an act without words; and so it may by words only, without any act of delivery. ■ All the books are to this effect. Shep. Touch. 57, lays down the doctrine . thus : “ So if I take the deed in my hand, and use these or •the like words : here take it; or, this will serve; or, I deliver this as my deed; or, I deliver it to you:; these are good deliveries.” To the same effect in Cruises Dig. tit. Deed, ch. 2, sec. 51. “ A deed may be delivered by words without any act of delivery; as if the writing sealed, lies on the table, and the feoffer says to the feoffee, go and take up the said writing, it is sufficient for you; or, it will serve the turm; or the like, words, it is a sufficient delivery.” So in Cro. Eliz. 7, Shelton’s case, “ A deed was sealed in presence of several and of the grantee himself, and read, but not ■ delivered, nor did the grantee take it, but it was left behind ’ them in the same place; the court said that the parties came for the purpose; it was left behind them and not *205 couutermanded, and is a good delivery in law.” In corroboration of those authors, see I Inst. 36 a.; 9 Co. 137; Comy. Dig. tit. Fait. A. 3. Now Mr. Folly’s words were quite as strong as those mentioned in the books, and much less equivocal than some of them. Ho signed and sealed in the presence of Mary and others, and had the bond lying before him on the table ; so far the similarity to the case in the books is perfect. Fie need not have taken it in his hand; for according to Lord Coke, Oomyns and Cruise, before cited, he might have let it lie on the table or window bench, and only have referred to it; he went further than the books require; he took it in his hand, and holding it out to Mary, said, “ here is your bond.” This is *far less equivocal than in the case of a deed for lands [*163 to say, “ there it lies on the table,” without saying what lies there, whether the deed or some other document or brief of title commonly on a table at the time of making out a conveyance. Mr. Folly left nothing dubious or equivocal about what instrument he intended by it, for he held the bond in his hand; and liis words were more pregnant with meaning than most of those which are said in the books to be sufficient; “ Mary, here is your bond;” had he said here is my bond, he would have left the matter equivocal, for it might be his, drawn up, signed and sealed, but not delivered, by him ; his saying here is your bond, is vastly more conclusive, inasmuch as it could not be her’s without delivery; therefore his words imported delivery, and they must be so understood or they cannot be true. Beyond ,all, he submitted the control and custody of it to her will, by asking her “ what shall I do with it f” The father condescends to ask instructions from his child touching the safe keeping of the instrument, thereby admitting her to be the owner and proprietor of it in a sense that she could not bo without a previous delivery, and shewing that he himself considered what was said and done as amounting to it. In the case of Goodrich v. Walker, 1 Johns. Cases, 253, it was taken as the *206 sense of all tlie books, “ that a formal delivery is not essential if there be any act evincing the intent." Now he could not have better manifested his intent to deliver the instrument, and render it effectual, than after signing and sealing, to take the instrument in his hand, hold it out to Mary, acknowledge it to be her bond, and submit 'it to her disposal. A delivery that was complete at the time could not be revoked afterward by Mr. Folly without the consent of his daughter.
Finally. If a delivery to Mary at the time be once established, it was by no means illegal or inconsistent that the father should be entrusted with the safe keeping of a bond belonging to his child. The idea that because it was a bond against himself and in his physical power, therefore he might lawfully suppress, cancel or destroy it, is altogether sophistical and repulsive to sound morals. He might as well claim a right to squander a sum of money belonging to a child, after it had been deposited in his hands for safe keeping, and deny that he was answerable. The promise contained in these words, “ I will take care of it for you.,” amounted to a solemn contract so to do, it created a direct trust and confidence and the violation of it would be consid*164] ered in all courts as a gross *and unnatural injury to the just rights of the child. On the whole the court decided properly in refusing the motion for a non-suit; in their charge they put the true point to the jury, whether the bond was delivered to Mary herself, and they might have gone further and declared that the acts and words ascribed to Mr. Folly amounted in law to a complete delivery. It is no injury to the defendant, of which he can complain, that the court did not charge against him as they might; and for these reasons I think there is no error, and that the judgment’ ought to be affirmed.
Drake, J.
The principal question in this cause relates to the delivery of the bond by the defendant to his daughter. *207 A motion that tho plaintiffs be non-suited, was made for defect of evidence in that particular; and the refusal of the court is assigned as a reason for the reversal of the judgment.
There are some authorities, that a delivery must be to the grantee, or a third person for his use. But these expressions are properly, applicable to the case of an escrow, or conditional delivery, as will appear upon tracing them back to their origin. There are many of these principles laid down in the old books, which, in the subsequent history of the law, are found too narrow to embrace the great variety of cases which arise, properly blonging to the same class. And it shows that commentators and courts should be cautious how they endeavor to regulate, or construe, by arbitrary rules tho ordinary transactions of mankind. It is opposed to the spirit of the common law, which is the perfection of reason, and seeks to adapt its provisions to the circumstances of every case; that the intentions of contracting parties may be carried into effect, and justice be done. “ Any acts or words evincing the intent to deliver,” are sufficient, provided such intent have reference to the present time. In the case before us, the intent was fully evinced. The defendant “ held the bond out in his hand, and said to Mary, here is your bond, what shall I do with it thus putting it at her disposal and under her control. The witness could not recollect Mary’s answer, but the defendant added, “ I will take care of it for you.” “ The bond was as Mary’s bond,” handed by the defendant to his wife, and put away. The defendant constituted himself her agent for the safe keeping of this bond. An act acquiesced in by the daughter, but not of a nature to deprive her of the benefit of the delivery. Situated as the parties *were, the delivery was as complete as if Mary had [*165 taken it into her hand when extended towards her, and had then returned it to her father for safe keeping. And that additional ceremony would have satisfied the most rigid requirements of any dicta to be found in the books.
*208 It is next objected, that the court did not explain the law to the jury, when requested, as to what would constitute a good delivery. If I am correct in the view taken of the first point in this cause, no injury has been done to the plaintiff in error by want of particularity in the charge of the court. If they had been more explicit, it must have been against the plaintiffs in error, and in conformity to the finding of the jury. Upon the whole case I am of opinion that the judgment be affirmed.
Judgment affirmed.