# CASES

## DETERMINED

IN THE

## SUPREME COURT OF JUDICATURE,

OF THE

### STATE OF NEW JERSEY,

### AT NOVEMBER TERM, 1835.

---

### THE STATE BANK AT TRENTON v. EVAN EVANS.

The subscribing witness to a bond, testified that at the time of its execution by the defendant, he said, "this bond is not to be delivered till signed by all the persons named therein," and upon inspection of the bond, it appeared that one of the obligors had not signed it, *held*, that the bond could not be received in evidence.

Whether a party say, "I deliver this writing *as my deed,* in the confidence that you will not deliver it to the grantee, until a certain event happens, or until a certain condition be performed ;" or whether he say, "I deliver it to you *as an escrow,* to take effect as my deed, upon a certain matter being done,"—it is in either case an *escrow ;* and will be inoperative in the hands of the party, by whatever means he may *get* possession of the instrument, until the condition is performed. It is the performance of the condition, and not the second delivery, that gives it vitality and existence as a deed.

---

This is an action upon a bond, given by Lambert Rickey, late Cashier of the State Bank at Trenton, for the faithful discharge of his duties as such officer. The defendant is one of his securities in the bond. The cause came on to be tried upon

the pleas of *non est factum,* and performance before a special jury at the bar of this court, at the term of November 1835.

*Saxton, Southard and Williamson,* for plaintiffs.

*W. Halsted and Wall,* for defendant.

The plaintiffs in support of the issue on their part, called Enos Forman, who being sworn, testified that the name Enos Forman, subscribed to the bond as a witness, is his signature—that he saw the defendant execute the bond, and he subscribed his name as a witness, at the request of the defendant—that he saw the defendant sign the bond in his store in Market street, in Trenton—no person was present but Lambert Rickey, the defendant and the witness, and no other person but the defendant executed the bond in his presence.

The witness then being cross examined, further testified, that on the morning of the day when the bond was signed by the defendant, Rickey came to the defendant's store, and handed him the bond ; the defendant came up to the counter, where witness was standing ; opened the bond and read it : he then said, Lambert, this bond is not to be delivered up, until all the persons named in it have signed it. Rickey said, certainly not. The defendant then signed the bond; and the witness signed his name—the witness looked at the bond—the name of Joseph Olden, jr. was in it, as one of the obligors—the defendant then handed the bond to Rickey—the witness said, that to the best of his recollection, the words of Evans the defendant, were, " the bond was not to be delivered till signed by all the persons named in it,"—that Rickey's signature was to the bond when he brought it, but no other name—upon inspection of the bond, it appeared that Joseph Olden, jr., had never signed it.

The plaintiff's here offered the bond in evidence to the jury—the defendant, by his counsel objected. 1st, because there was no evidence that the charter required or authorised such bond—nor 2ndly, that the board of directors had ever required or accepted the bond in question ; and 3rdly, that there was no proof of a delivery of the bond.

After argument, the court delivered opinions *seriatim.*

HORNBLOWER, C. J.   The plaintiffs come into court with an instrument in their hands, purporting to be a bond of the

State Bank *v.* Evans.

defendant, on which they seek a recovery against him. If it is a bond made by the defendant, and if it belongs to the plaintiffs, they are entitled to recover upon it. The plaintiffs must then show their title to the instrument, and that it is a bond made by the defendant. But they have no title to, or right of possession of the instrument, unless it was delivered to them, or to some person for them, by the defendant, or by some person by him, expressly, or by legal implication authorized to transfer or deliver it over to them. I do not now use the word "deliver," in its technical sense. I do not mean such a *delivery* as is included in, and as is necessary to complete the execution of a deed. I speak only of the handing over to, or putting the plaintiffs in the possession of the paper and wax. If the plaintiffs prove an actual execution and delivery of the bond by the defendant, it includes a manual transfer, or handing over the instrument to them, and establishes their right to the possession of it. It is not necessary however, to prove an actual receipt of the bond, from the hands of the defendant, or his authorized agent. Their possession of the instrument, is *prima facie* presumptive, and until disproved, sufficient evidence of a transfer of it to them, by the defendant. But the moment it appears that the plaintiffs did not receive it from the defendant, this presumption falls to the ground. Now it does affirmatively appear by the subscribing witness, and the only witness examined in the cause, that the defendant did not himself hand it over to the plaintiffs; nor to any person for them. But on the contrary, he handed it to Rickey with the express understanding that he was not to deliver it to the plaintiffs in the situation it then was, and in which, it now appears. The question then arises, when and in what manner, did the plaintiffs become possessed of the instrument? From whom did they receive it? In the absence of all evidence upon this point, the plaintiffs call upon the court, to presume from the fact of their being in possession of the bond, that it was delivered to them by Rickey. But this we cannot presume, without also presuming, that Rickey violated his trust. This would be an unlawful presumption, and presumption against presumption. From all that appears then, the plaintiffs may have come

accidentally to the possession of this bond; or may have found it among the cashier's papers, after he left the bank. From such a naked, unexplained possession, no *delivery* of the bond to the plaintiffs, as the defendant's deed, can be inferred. In all the cases which have been cited at the bar, and in which the question arose whether the deed was delivered as an *escrow* or not, it appeared in evidence that the plaintiffs received the instrument from the person with whom it had been intrusted. I am therefore inclined to think, the plaintiffs in this case have failed to make *any* legal proof of their title to the bond in question; and if they have no title, they cannot recover upon it, however ceremoniously the instrument may have been signed and sealed by the defendant. But without deciding the cause, upon this ground, I will proceed upon the supposition that Rickey violated his engagement, and actually handed over the bond to the plaintiffs in the condition it now is. Then the important question arises : Have the plaintiffs given *any* legal evidence of the *delivery* of this bond by the defendant as his deed?

A distinction was taken by the counsel for the plaintiffs, and seems to be recognized in some of the books, between the delivery of the instrument, *as the deed* of the party, to a third person as a trustee or agent, to be delivered to the grantee, upon the happening of some contingency, or the performance of a condition; and a delivery of the instrument *as an escrow*, to take effect *as a deed*, upon such contingency happening, or condition performed. In the former case, it is supposed to be the party's deed presently, and in the latter, not until the event happens, or the condition be performed. Accordingly in *Comyn's Dig. Tit. Fait. A.* 3, it is said, "if it be delivered *as his deed*, to a stranger, to be delivered to the party upon the performance of a condition, it shall be his deed presently ; and if the party obtain it, he may sue before condition performed;" and for this the Digest cites, 2 *Roll.* 25, *L.* 30, and 1 *Leon.* 152. And again, in the same division of the Digest, it is said, "if it be delivered to a stranger *as an escrow*, to be *his deed* upon performance of conditions, *it is not his deed* till the conditions are performed, though the party happens to have it before," and for this, is cited *Co. Litt.* 36 *a.* The same distinction appears

to be recognised by the court, in the case of *Murray* v. *The Earl of Stair.* 2 *Barn. and Cress.* 82; and *Chan.* Kent in his commentaries, 4 *vol.* 1st *ed.* 447, takes notice of the doctrine; and refers to *Perkins,* 143, 144; *Holt. C. J.* 6 *Mod. R.* 217; and *Parsons, C. J.* 2 *Mass. R.* 452, as sustaining it. But the learned commentator just mentioned, says in a note, " the distinction on this point is quite subtle, and almost too evanescent to be relied on." In this I fully concur, and indeed do very much doubt, whether there is any just foundation in the law, for such a distinction. In *Johnson* v. *Baker,* 4 *Barn. and Ald.* 440, the court say, that the case cited by Baron Comyns, from 1 *Leon.* 152, is that of *Degory* v. *Roe,* and though three of the Judges so expressed themselves in argument against the opinion of the court, yet it does not appear by the report of the case, in *Leon.* 152, to have been so decided; but that upon looking into the same case as reported in *Moore,* 300, it was decided the other way.

In *Murray* v. *The Earl of Stair.* 4 *Barn. and Cress.* 82, although Chief Justice ABBOT recognised the distinction between a writing delivered *as a deed,* to an agent or trustee, and one delivered *as an escrow* upon condition, yet he has drawn no distinctive marks by which to determine, whether a delivery is of the one or the other character. He however told the jury, that it was not necessary in order to make the delivery conditional, that the party should say he delivered it as an *escrow,* or that he should use any express words of condition at the time; and I cannot but consider the embarrassment, the court evidently felt upon that occasion, as a clear illustration of the justice of Chancellor KENT'S remark, that the distinction is too subtle and evanescent to be relied on.

My opinion therefore is, that whether a party say, " I deliver this writing *as my deed,* in the confidence that you will not deliver it to the grantee, until a certain event happens, or until a certain condition be performed; " or whether he say, " I deliver it to you *as an escrow,* to take effect as my deed, upon a certain matter being done;" it is in either case *an escrow,* and will be inoperative in the hands of the party, by whatever means he may get possession of the instrument, until the condition is

performed. It is the performance of the condition, and not the second delivery, that gives it vitality and existence as a deed, and so are the old authorities.

In *Perryman's case,* 5 *Co.* 84, it is said—if a man delivers a writing as an *escrow,* to be his deed on certain conditions to be performed; and afterwards the obligor or obligee dies; and afterwards the condition is performed; *the deed is good;* for here was *tracditio, inchoata,* in the lifetime of the party, *sed postea consummata existens,* by the performance of the condition, and it takes effect by force of the first delivery, without any new delivery.

So also in *Wymark's case,* 5 *Co.* 75, a deed of release of waste, had been delivered by the plaintiff to a third person, to be by him delivered to the defendant, on a condition to be performed; after condition performed, the plaintiff got the deed back into his possession; but the deed was considered effectual, and the party permitted to plead the matter specially, without showing the deed.

So too, in *Shep. T. S.* 59, it is said; "where the deed is delivered to a stranger, (upon condition) and apt words are used in the delivery thereof, it is of no more force *until the condition be performed,* than if I had made it, and had it by me, and never delivered it at all. If the party in such case, get it in his possession, *before* the condition performed, yet he can make no use of it."

The same principle, viz: that it is the performance of a condition which gives efficacy to the deed, was fully recognised by the Supreme Court of New York in *Archer* v. *Whaler,* 1 *Wend. R.* 199, where the above passage from *Shep. T. S.* was quoted by the court.

In *Jackson* v. *Catlin,* 2 *Johns. R.* 248, the deed was executed and delivered to the attorney of the purchaser, to be by him delivered to the purchaser, on payment of the purchase money. KENT, Chief Justice, said "the deed was clearly an *escrow.* It was to be delivered on payment of the purchase money. This was a plain and specific condition, *to be performed before the deed could operate,*"—and he adds, "it is of no force until the condition be fulfilled."

If then the bond in question was delivered by the defendant to Rickey, upon a condition, it is clear that the plaintiffs' right to recover, does not depend upon the fact of their having the possession of the bond, even if it was delivered to them by Rickey; but upon the question, whether the condition has been performed, and since in this case, it appears on the very face of the instrument, that the condition upon which it was to take effect, has not been fulfilled, there is nothing for the jury to pass upon, and the bond ought not to be read in evidence.

The case of *Johnson* v. *Baker,* 4 *Barn. and Ald.* 440, already mentioned, bears a very strong resemblance to this. The defendant pleaded, 1st, *non est factum;* and 2ndly, that the deed was delivered as an *escrow, &c.* When the deed was executed by the defendant, there was a conversation respecting the difficulty that might arise, in case all the creditors did not execute the deed; when it was stated that the deed should be void, unless all the creditors executed it. Subsequently, but at the same interview, the defendant executed the deed in the ordinary way, and without saying any thing at the time, and delivered it to *one of the creditors,* who was to get it signed by the others. ABBOT, Chief Justice, thought the condition previously expressed, although not repeated in the act of delivery, made this a delivery as an *escrow,* and the condition not having been performed, he directed a non-suit; which the court afterwards refused to set aside.

The case of *Auten* v. *Howell,* 7 *Taunt.* 27, did not involve the question of delivery. It was a replevin bond, and the defendant pleaded that it had not been executed by his co-security named in it. Upon this plea, judgment was given for the plaintiff. But in the same book, 323, 327, when the same case was before the court again, one of the Judges said, "if the defendant had pleaded that he delivered the bond as an *escrow,* until it should be delivered by the other party, I very much doubt whether he would not have succeeded."

In *Duncan* v. *The U. S.,* 7 *Peters. R.* 435, Mr. Justice McLean, in delivering the opinion of the court, says, "It is a principle of the common law, too well settled to be controverted, that where an instrument is delivered as an *escrow, or*

---

State Bank *v.* Evans.

---

where one *security* has signed it, *on condition* that it shall be signed by another before its delivery, no obligation is incurred until the condition shall happen.

The civil law goes further, and presumes that the party signing it, did so upon the condition that the other obligors named in the instrument, should sign it, and their failure to comply with their agreement, gives him a right to retract. *Wells* v. *Dill,* 1 *Martin's Rep.* 592, cited in 7 *Peters' R.* 435.

But it is objected upon the authority of this court, in the case of *The State Bank* v. *Chetwood,* 3 *Halst.* 25, that a deed cannot be delivered as an *escrow,* to a co-obligor or co-grantor. It certainly was so said by this court in that case; but it was a point that seems from the report of the case, not to have been much discussed or considered; and if it was, it is not too late to correct the error.

The case of *Johnson* v. *Baker,* already cited, is an instance to the contrary; and the case of *Pawling and al.* v. *The U. S.* 4 *Cranch,* 219, is a direct authority. The very point decided in that case, was, that a bond may be delivered as an *escrow,* by the surety, to the principal obligor.

In *Thorowgood's case,* 9 *Co.* 137 *a.* the law upon this subject is stated, that if A makes a writing to B and seals it and delivers it to B as an *escrow* to take effect as his deed, when certain conditions are performed, it has been abjudged to be *his deed immediately ;* for the law respects the *delivery to the party himself,* and rejects the words which would make it conditional. And again; if the obligor deliver the bond to the *obligee,* to re-deliver to him, the obligee may retain the bond forever.

In *Co. Litt.* 36 *a.* the reason is assigned for this rule:—" If a man deliver a writing sealed, *to the party to whom it is made,* as an *escrow,* this is an absolute delivery of the deed, being made *to the party himself;* for the *delivery* is sufficient, without words, as otherwise a mute could not deliver a deed. Tradition merely is requisite, and then, when the words are contrary to the act, which is the delivery, the words are of none effect—*non quod dictum est, sed quod factum est, inspicitur.* But it may be delivered to a stranger, as an *escrow,* because the

bare act of delivery to him without saying any thing, effects nothing." It is evident that the word *stranger*, is used by Lord Coke, in this place, in opposition to the *party to whom* the deed is made. A delivery to a co-obligor, without words, would give no more effect to the instrument, than delivery to a stranger without words. Per. Spencer, Justice, in *Jackson* v. *Phipps*, 12 *Johns. R.* 421; and *Section* 1, *Shep. T. S.* 57, 58, 2 *Bl. Com.* 307, 4 *Vin. Abr.* 27, *Section* 52.

FORD, J. concurred.

RYERSON, J. One of the important questions in this cause is, was this supposed bond ever delivered? The question to which the *Court* is called on to respond, is there such evidence of a delivery, as ought to be submitted to the consideration of a jury? Delivery implies that the party who has sealed, has given up his control of the writing, to and for the use and benefit of the other party. Laying all technicality out of view, is this true in point of fact—or rather is there any evidence of it? Directly the contrary is proved by the evidence in question. The defendant never meant to deliver such a paper as this. He signed, and by adoption, or inference, sealed it. But he never passed it to the plaintiffs, or consented that it should go into their possession. If instead of handing the writing to Rickey, in the manner in which it was done, it had been handed to him, to ask the opinion of counsel respecting its legal operation, and it had got into the possession of the plaintiffs, contrary to an express prohibition, it would in legal contemplation, have constituted, to my apprehension, as complete a delivery as the one now proved. The reason is plain, the *intention to deliver*, which is of the essence of the transaction, is wanting. The intention to deliver *this* writing, was never formed, but one quite different. If after the draft had been prepared, and all the proposed obligors had met together for the purpose of executing it, Rickey and the defendant had signed it in the manner as now proved, and the witness attested—the other parties had declined to sign it, asking further time to deliberate; and the defendant had then handed the paper to Rickey, with directions that it should " not be delivered," *or* " delivered up " till the other sureties had signed, who never did—but yet, in a

manner unexplained, the paper is found in the hands of the plaintiffs—may I not ask if any person in the possession of his sound mind, would consider it, without further proof, the valid bond of this defendant—a bond in which his obligation was fourfold greater than what he meant to assume, and a security which the other party never meant to accept? And yet, the case put, although more glaring to our natural sense of justice, more striking in its features, is not essentially different in principle, to my perception, from the one before the court. I can not therefore consent to leave these facts to a jury, nor give instructions that they may therefore lawfully infer a delivery of the writing. Any such presumption is repelled by the proof actually made. Where the instrument is upon its face, complete for delivery, in the absence of proof, how the one party lost and the other acquired the possession; the law, which supposes or presumes no wrong, will allow the inference that it is properly in the hands for which it appears to have been designed. But no such inference can arise against the proof— the positive direction of the party, that it was not to be delivered in the shape in which it appears before the court; and the manner of its passing out of his hands, is shown in conformity therewith. The paper in fact, was not ready for delivery. A mere parting with the *actual* possession of a writing, is very different from a legal delivery, which is to give it operation as a deed. There is therefore in this case, no evidence of such legal delivery; and the paper should not be read to the jury.

This result saves me from the necessity of examining into the distinction between a delivery, absolute, and as an *éscrow.* I will add however, on that subject, that I am not satisfied, that a writing may not be delivered as an *escrow,* to a joint obligor, or other joint grantor. As at present advised, it appears to me, that the restriction upon such delivery to a *party* to the instrument, means, when properly understood according to the true doctrine of at least a majority of the books and cases cited, the *party* who is to derive the advantage from such writing. If upon this subject, we are in danger of refining, till the general principles, the land marks of the law, are rendered invisible; it equally behooves us to see that we do not, by a course of subtle

reasoning, weave for a party, a net, which he has not prepared for himself. Or in other words, in giving an exposition to the acts and sayings of parties, lose sight of their manifested intentions.

We are warned against the danger supposed to lurk behind this interpretation of the law ; and allusion was made in the argument, to the doctrine respecting *mercantile* paper. But there is no analogy between the instruments. One is made expressly for the public, for circulation through unknown hands ; the other for the sole possession of the obligees, who are held to a vigilant inspection of the mode of execution, equally with the party to be bound thereby.

CITED in *Black* v. *Lamb,* 1 *Beas.* 117 ; *Black* v. *Shreve,* 2 *Beas.* 481.