293 N.J. Super. 452 (1996)
681 A.2d 121
ANDRE CONSTRUCTION ASSOC., INC., PLAINTIFF,
v.
CATEL, INC., U.S. DEPARTMENT OF THE ARMY AND ULICO CASUALTY COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division Monmouth County.
Decided February 16, 1996.
*453 Christine Romeo, for defendant/third party plaintiff, ULICO Casualty Co.
Kathleen R. Wall, for plaintiff.
Richard P. Grossman, for defendant, Catel, Inc. & third-party defendants Telmo Pires and Cathleen Pires.
D'AMICO, J.S.C.
Defendant/third party plaintiff ULICO Casualty Company (ULICO) moves for summary judgment against defendant Catel, Inc. (principal) and third-party defendants Telmo and Cathleen Pires (indemnitors) for all expenses, including attorney's fees, incurred by ULICO under a performance and payment bond. ULICO issued the bond on behalf of the principal and in favor of the U.S. Army Corps of Engineers, in order to guarantee the principal's performance under a construction project.
*454 As a condition precedent to issuance of the bond, ULICO requested and received a written indemnity agreement from the principal and from the indemnitors which included the following provisions:
Indemnitor will ... at all times indemnify and save the Company [ULICO] harmless from and against every claim, demand, liability, loss, cost, charge, counsel fee, payable on demand of Surety, whether actually incurred or not, (including fees of special counsel whenever by the Company deemed necessary) expense, suit, order judgment and adjudication whatsoever, and any and all liability therefor, sustained or incurred by the Company by reason of having executed or procured the execution of said bonds or obligations, and will place the Company in funds to meet same before it shall be required to make payment....
... the Company shall have the right to pay, settle or compromise any expense, claim or charge of the character enumerated in this agreement, and the voucher or other evidence of such payment shall be prima facie evidence of the propriety thereof and of the indemnitor's liability therefore to the Company.
ULICO thereafter received claims from Andre Construction Associates against the bond in the total amount of $30,165.40. Andre Construction instituted suit against ULICO, the principal and the U.S. Department of the Army to collect monies allegedly due it for work performed on the project. ULICO filed an answer, crossclaim and 3rd party complaint. On July 28, 1995, the court granted ULICO's motion for summary judgment and dismissed Andre Construction's complaint against ULICO for lack of subject matter jurisdiction. Andre Construction then commenced a suit in federal court which was voluntarily dismissed.
ULICO submits that the principal and indemnitors have refused to reimburse ULICO for its attorneys' fees and expenses in the amount of $5,150.74 incurred as a result of having defended claims against its bond and as a result of having to prosecute this action. The principal concedes that pursuant to the terms of the bonding agreement, it agreed to defend and indemnify ULICO against these claims. Before the principal could file an answer on behalf of ULICO, however, ULICO retained independent counsel who entered an appearance and filed a cross-claim for the counsel fees expended in the defense of the action.
The principal argues that this matter should be submitted to mandatory fee arbitration pursuant to Rule 1:20A-2 on the ground *455 that the relief sought by ULICO deprives the principal of its rights under the Rule. The principal therefore requests that ULICO'S motion be denied so that the matter can be presented to the District Fee Arbitration Committee.
The critical issue in this case is whether a District Fee Arbitration Committee has jurisdiction to arbitrate a fee dispute at the request of a principal or indemnitor of a surety. Rule 1:20A-2(a) concerning District Fee Arbitration Committees provides, in relevant part:
Each Fee Committee shall, pursuant to these rules, have jurisdiction to arbitrate fee disputes between clients and attorneys. Fee Committees shall also have jurisdiction to arbitrate disputes in which a person other than the client is legally bound to pay for the legal services....
To determine whether R. 1:20A-2 authorizes mandatory fee arbitration between a surety and its principal or indemnitors, the court must look to the contract of indemnity to determine the parties' respective rights and obligations. The court must interpret the indemnity agreement in accordance with the rules governing the construction of contracts generally. Levison v. Weintraub, 215 N.J. Super. 273, 521 A.2d 909 (App.Div. 1987). Where the obligations of the parties are clear and unambiguously set forth in the indemnity agreement, the court should summarily enforce such indemnification provisions. Id. at 276, 521 A.2d 909 (App.Div. 1987). As the Court in Cozzi v. Owens Corning Fiber Glass Corp., 63 N.J. Super. 117, 121, 164 A.2d 69 (App.Div. 1960) observed:
A contract of indemnity is to be interpreted in accordance with the rules governing the construction of contracts generally. The fundamental rule in construing contracts calls for the ascertainment of the intention of the parties in the light not only of the language used but also of the surrounding circumstances and the objects sought to be attained by them under their agreement.
The subject indemnification and defense clause is clear and unambiguous. There is no provision relating to mandatory fee arbitration. Moreover, there is no evidence to suggest that the parties intended to submit any disputes related to attorneys' fees and expenses to arbitration. ULICO was therefore justified in *456 relying upon the indemnification and defense clause in the agreement.
The indemnitors argue that Rule 1:21A-2(a) should apply because of the provision that "Fee Committees shall also have jurisdiction to arbitrate disputes in which a person other than the client is legally bound to pay for the legal services." This court finds that a person other than the client is "legally bound" to pay for legal services only where there exists an attorney-client relationship pursuant to which that person is obligated to compensate the attorney  an obligation which the attorney may enforce by filing an action for payment of fees.
In the instant matter, ULICO was not obligated by the indemnification agreement to provide an attorney for the principal or indemnitors; therefore, it cannot be said that the attorney retained by ULICO was required to treat them as clients. Cf. Prevratil v. Mohr, 279 N.J.Super 652, 658, 653 A.2d 1190 (App. Div. 1995). ULICO was the client, has already paid its attorneys, and is now seeking reimbursement from the principal and the indemnitors. The principal and indemnitors are legally bound to pay to ULICO an amount representing the charges for legal services rendered on behalf of ULICO, but they have no direct obligation to pay ULICO's attorneys for services rendered.
A surety, its principal and its indemnitors are engaged in a commercial business relationship which establishes, by contract, specific benefits and burdens to the parties. By issuing its bond, the surety takes the risk that the principal will fulfill its obligations. If the principal does not do so, the surety is required to step in and bear the cost of satisfactorily completing the project and/or paying the principal's subcontractors and suppliers. In order to protect itself from potentially substantial losses, the surety invariably requires the principal and indemnitors to enter into an indemnity agreement.
At the heart of the surety-principal relationship is the intention of the parties  clearly established in the indemnity agreement  that the surety will be repaid for all claims paid or expenses *457 incurred as a result of issuing bonds on behalf of the principal. When principals and their indemnitors seek to avoid their contractual obligations, the surety must not only discharge its responsibilities under its bonds but also take the necessary steps to enforce its indemnification rights as to the losses and expenses incurred. Generally, the surety must seek legal advice and representation as to these matters.
Subjecting to mandatory fee arbitration a surety's claim against its principal or indemnitors for reimbursement for attorney fees could substantially impair and compromise the surety's contractual rights to receive full reimbursement for its legal expenses. Furthermore, referring a surety's claim for attorneys' fees to mandatory fee arbitration would necessarily require a District Fee Arbitration Committee to adjudicate a dispute, not between an attorney and his or her client, but between that attorney and the client's adversary. Since the principals and indemnitors are not the clients of the attorney retained by the surety, they are far less likely to appreciate the efforts made, or the results obtained, by the surety's attorney. They would therefore have every incentive to contest the fees, whether reasonable or not.
Another disadvantage of giving District Fee Arbitration Committees jurisdiction to arbitrate a surety's claims against the indemnitors for reimbursement of attorney fees is that attorneys might be reluctant to represent sureties, as they would be confronted with the prospect of having to answer to their client's adversaries. In that connection, Section 1.7(b) of the Rules of Professional Conduct provides that "a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to ... a third person, or by the lawyer's own interests...."
Finally, the "entire controversy doctrine" codified in Rule 4:30A mandates the adjudication of all components of a legal controversy in a single litigation as a matter of fairness to the parties and protection of the judicial system from unnecessary waste, inefficiency, and delay. Cogdell v. Hospital Center, 116 N.J. 7, 22-24, *458 560 A.2d 1169 (1989). It has been held that the preclusionary consequences of the "entire controversy doctrine" must be cautiously applied to litigation involving limited issue arbitration and only if necessary to achieve the purposes and policy of the doctrine. Jersey City Police v. Jersey City, 257 N.J. Super. 6, 607 A.2d 1314 (App.Div. 1992) (The city was not precluded from seeking clarification as to the scope of an arbitration award to whose confirmation it had agreed). This holding suggests that the entire controversy doctrine should not apply in a situation where an action for payment of a fee has been filed by an attorney against a client who requests arbitration by a District Fee Arbitration Committee. In that situation, Rule 1:20A-3(a)(1) provides that the request or consent for arbitration shall include a stipulation by the client that if an action for payment of the fee is then pending, it shall be stayed pending a determination by the fee committee, and the amount of the fee so determined may be entered as a judgment in the action. Rule 1:20A-3(e) further provides that if an action for collection of the fee is not pending, the attorney or client may, by summary action brought pursuant to Rule 4:67, obtain judgment in the amount of the fee or refund as determined by the Fee Committee in accordance with N.J.S.A. 2A:24-1 to 11. The entire controversy doctrine would not preclude such a summary action.
In a typical case involving a surety, however, the surety will usually file one legal action seeking indemnification for substantial losses on bond claims as well as attorney's fees. District Fee Arbitration Committees have jurisdiction to arbitrate attorney fee disputes only. Imposing mandatory fee arbitration upon a surety's claim for reimbursement for attorney fees incurred in connection with claims under a surety bond will, in most cases, result in at least two proceedings. One proceeding will be the surety's court action for reimbursement for losses on claims under the surety bond and the other proceeding will be a fee arbitration of the surety's claim for reimbursement for the legal fees and expenses incurred in connection with those bond claims. If Rule 1:20A-3 were to apply, either the entire underlying action would have to be stayed or the action for reimbursement for legal *459 expenses would have to be bifurcated from the other claims under the surety bond. Thus, both the surety and the principal and/or indemnitors might be forced to engage in two or more proceedings in which many of the legal and factual issues will be the same. The entire controversy doctrine precludes fee arbitration under Rule 1:20A-2 of claims for reimbursement for attorney's fees under suretyship/indemnity agreements because: (1) the principal and indemnitors will have a fair and reasonable opportunity to fully litigate that issue in the underlying action and (2) a stay or bifurcation of that action will result in unnecessary waste, inefficiency, and delay.
For the reasons set forth in this opinion, ULICO's motion for summary judgment is granted and judgment is entered in favor of ULICO and against the principal and the indemnitors, jointly and severally, in the amount of $5,150.74, plus further costs incurred in prosecuting this motion to be determined upon submission of an affidavit of services.