**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A- 2040-17T4

MEDFORD COMMONS, LLC,

     Plaintiff,

v.

LEXON INSURANCE COMPANY
and BOND SAFEGUARD INSURANCE
COMPANY, jointly and severally,

     Defendants.

_____

TOWNSHIP OF MEDFORD,

     Intervenor-Plaintiff,

v.

LEXON INSURANCE COMPANY and
BOND SAFEGUARD INSURANCE
COMPANY, jointly and severally,

     Defendants.

_____

LEXON INSURANCE COMPANY and
BOND SAFEGUARD INSURANCE
COMPANY,

Third-Party Plaintiffs-Respondents,

v.

FREEDMAN COHEN DEVELOPMENT, LLC, CARL FREEDMAN, Individually, and MITCHELL COHEN, Individually,

     Third-Party Defendants-
     Respondents.

_____

MEDFORD     VILLAGE     EAST ASSOCIATES,

     Third-Party Defendant/Fourth-Party
     Plaintiff-Appellant,

v.

MEDFORD     COMMONS,     LLC, TOWNSHIP     OF     MEDFORD, FREEDMAN COHEN DEVELOPMENT, LLC, CARL FREEDMAN, Individually, MITCHELL     COHEN,     Individually, PENNONI ASSOCIATES,

     Fourth-Party Defendants-
     Respondents.

_____

     Argued on October 10, 2019 – Decided December 26, 2019

     Before Judges Koblitz, Whipple and Gooden Brown.

     On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-0222-08.

Peter Jay Boyer argued the cause for appellant (Hyland Levin Shapiro LLP, attorneys; Peter Jay Boyer, on the brief).

Joseph T. Carney argued the cause for respondent Lexon Insurance Company and Bond Safeguard Insurance Company (Brown & Connery, LLP, attorneys; William M. Tambussi and Joseph T. Carney, on the brief).

Andrew Bruce Cohn argued the cause for respondent Medford Commons, LLC (Kaplin Stewart Meloff Reiter & Stein PC, attorneys; Andrew Bruce Cohn, on the brief).

Stephen McNally argued the cause for respondent Pennoni Associates, Inc. (Chiumento McNally LLC, attorneys; Stephen McNally, on the brief).

Christopher J. Norman argued the cause for respondent Medford Township (Christopher J. Norman, attorney; Christopher J. Norman and George J. Botcheos, Jr., on the brief).

Sherry S. Cohen argued the cause for respondents Freedman Cohen Development, LLC, Carl Freedman, and Mitchell Cohen (Kotlar, Hernandez & Cohen, attorneys; Justin M. Cohen, on the brief).

PER CURIAM

Plaintiff Medford Commons, LLC sued Lexon Insurance Company and Bond Safeguard Insurance Company (collectively Lexon), the issuer of a surety bond, to recover money plaintiff spent completing an affordable housing project. As the surety, Lexon paid out under the bond to allow plaintiff to complete

3                                                                A-2040-17T4

construction after the redevelopers, Medford Crossings North (MCN) and Medford Crossings South (MCS), defaulted on the project. Lexon, in turn, brought a third-party complaint against its indemnitors, Medford Village East (MVE), Freedman Cohen Development, LLC (FCD), Carl Freedman and Mitchell Cohen. MVE brought a fourth-party complaint against FCD, Medford Commons, Pennoni Associates, Inc. (Pennoni) and the Township of Medford (Township), as well as five principals of FCD: Mitchell Cohen, Carl Freedman, Chris Conlon, Peter Ripka and Todd Cooper (collectively fourth-party defendants).

MVE appeals from the grant of summary judgment requiring it to indemnify Lexon. It also appeals the grant of summary judgment in favor of the fourth-party defendants. MVE's central argument is that it was not obligated to indemnify Lexon under the General Agreement of Indemnity (Indemnity Agreement) because the scope of the project had changed without the Township Planning Board's required approval and without MVE's consent. We reject this proposition. The Township engineer had the authority to approve changes to the affordable housing project without the need for Planning Board approval or consent of the signatories. Nor did the court err in granting summary judgment prior to taking depositions. It also did not err in determining that MVE received

sufficient consideration for entering the Indemnity Agreement even though the value of MVE's property may not have risen as much as anticipated. The consideration was the ability of the project to go forward. We therefore affirm summary judgment requiring MVE to indemnify Lexon.

We reverse the grant of summary judgment to the fourth-party defendants, because MVE's claims against the fourth-party defendants did not depend on the outcome of Lexon's indemnity claims against MVE. MVE did not have an opportunity for discovery on those claims. We also vacate the counsel fee award to Lexon and remand for reconsideration and a more thorough statement of reasons.

## I. Factual Background.

MVE and its principal, Stephen Samost, owned approximately 280 acres of land located on both sides of Route 70 in Medford. In 1995, MVE reached an agreement with the Township concerning the property's redevelopment. Disputes arose and in 1996, MVE instituted litigation that was eventually settled in 2005, when MVE and the Township agreed that the site would be designated as a commercial and residential redevelopment area. The Township would condemn the property and then sell it to third-party developers to be developed in phases.

Christopher Noll, engineer for the Township Planning Board, certified that the site plan approved by the Planning Board contained "[three] major components: a large retail shopping center, a market-rate residential housing development and a [sixty]-unit affordable rental housing development." Plaintiff and the Township selected MCN and MCS[1] as the redevelopers for the project. In late April 2006, MVE, the Township, MCN and MCS entered into agreements to implement the redevelopment plan.

Pursuant to the agreements, one of the two properties was to be closed by August 2006; however the closing did not occur and MVE declared a default. A resolution was reached in January 2007 that allowed for the affordable housing component of the project to proceed while MVE, MCN and MCS attempted to work out their remaining issues. As a result, Pennoni became the overall project engineer.

Also in January 2007, Noll prepared an estimate for the developer's cost of the affordable housing project of $1,932,258.[2] The performance guarantee estimate was "for the above referenced project," which was referred to as "COAH Residential."

---

[1] Freedman and Cohen, in their individual capacities, owned MCN and MCS.

[2] We round all monetary amounts to the nearest dollar.

A-2040-17T4

The Performance Surety Bond (Bond) between MCS as principal, and Lexon as surety, on behalf of plaintiff as one of the obligees, was signed the following month. It stated:

> Pursuant to municipal ordinance . . . the principal hereby furnishes a . . . bond in the amount of $1,932,258[] (not to exceed 120 percent of the cost of the improvements, as certified by the municipal engineer) . . . guarantying full and faithful completion of improvements approved by the approving authority, in lieu of completing the required improvements prior to the granting of final approval. This [B]ond shall remain in full force and effect until such time as all improvements covered by the [B]ond have been approved or accepted by resolution of the municipal governing body, except that in those instances where some of the improvements are approved or accepted by resolution of the governing body upon certification by the municipal engineer, partial release from the [B]ond shall be granted in accordance with N.J.S.A. 40:55D-53.

Among the stated conditions, the surety was permitted, "in its sole discretion . . . [to] make a monetary settlement with the municipality as an alternative to completing the work." In addition:

> In the event that the principal and the approving authority agree to changes in the scope of work, the obligations of the surety under this [B]ond shall not be affected so long as the cost of the work does not exceed 120 percent of the municipal engineer's certified estimate . . . .

A-2040-17T4

The Bond further provided that "[t]he estimate dated January 15, 2007 and revised February 5, 2007 by the municipal engineer of the cost of this work is attached hereto and made a part hereof."

The Indemnity Agreement between MVE, MCN, MCS, FCD, Freedman, Cohen and Lexon was signed in March 2007. It provided that "in consideration of the premises, and the payment by [Lexon] of the sum of One ($1.00) Dollar to each of the [i]ndemnitors . . . and for other good and valuable considerations," the indemnitors, MVE, MCN, MCS, FCD, Freedman and Cohen:

> will indemnify and save [Lexon] harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which [Lexon] may pay or incur in consequence of having executed, or procured the execution of, such bonds . . . or in bringing suit to enforce the obligation of any of the [i]ndemnitors under this [a]greement.

The agreement further provided:

> 5. [Lexon] shall have the exclusive right to determine for itself and the [i]ndemnitors whether any claim or suit brought against [Lexon] or the [p]rincipal upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon the [i]ndemnitors.
>
> 6. If such bond be given in connection with a contract, [Lexon] is hereby authorized, but not required, to consent to any change in the contract or in the plans or specifications relating thereto . . . .

A-2040-17T4

7. That it shall not be necessary for [Lexon] to give the [i]ndemnitors, or any one or more of them, notice of . . . any fact or information coming to the notice or knowledge of [Lexon] affecting its rights or liabilities, or the rights or liabilities of the [i]ndemnitors under any such bond executed by it, notice of all such being hereby expressly waived.

In addition, the Indemnity Agreement provided that the indemnitors' "liability shall be construed as the liability of a compensated [s]urety, as broadly as the liability of [Lexon] is construed toward [plaintiff]."

In March 2007, the Township, plaintiff and MVE also entered into the Affordable Housing Development Agreement (AHDA), in which MCN and MCS, as redevelopers, agreed to provide the bond to complete the affordable housing portion of the project. The Township engineer's estimate was attached to the agreement. The AHDA stated that commencement of the construction of the affordable housing project was a "condition precedent to the issuance of certain building permits."

On the same date, MVE and plaintiff signed the Access and Infrastructure Easement agreement (Easement) for the construction of the infrastructure of the affordable housing portion of the development. The agreement granted plaintiff an easement to construct the infrastructure improvements. It also stated:

In the event that [g]rantor and [g]rantee cannot agree as to which of the [i]nfrastructure [i]mprovements . . .

9

are "necessary and appropriate" for the development [or] construction . . . of the [p]roject, the [m]unicipal [e]ngineer of the Township . . . shall make a determination with respect [to] such dispute and such determination shall be conclusive and binding upon the parties hereto, subject to modification of the plans as set forth herein.

Also in March 2007, MCS posted the security bond to secure performance of the infrastructure improvements for the affordable housing component, and the affordable housing parcel of land was transferred to plaintiff.

In October 2007, MCN and MCS filed for bankruptcy protection prior to completing the infrastructure improvements under the AHDA. As a result, plaintiff declared them in default and made a claim against Lexon on the Bond, and also finished the construction of the affordable housing component.

Noll certified that because of the bankruptcy filing and the timing gap between the affordable housing construction and the infrastructure improvements, he considered suggestions by plaintiff, MCN, and MCS "as to certain temporary modifications and administrative field changes to the site plans to facilitate the installation of the [i]nfrastructure [i]mprovements for the affordable housing development portion of the project." In an email sent on November 20, 2007, plaintiff's principal said he had met with Noll, who "agreed to allow us to eliminate a costly bit of work on the plans that is not necessary

and to do so without a plan amendment or formal process." In March 2008, Pennoni's project engineer wrote a letter to Noll attaching the final site plans for phase one of the project stating: "Due [to] the nature of the plan changes as compared to the approved plans for full build out, it is our understanding that this supplemental information will be reviewed and approved administratively by your office, and will not be presented to the planning board."

By way of a letter dated March 27, 2008, Samost told the Township's attorney that MVE would not agree to the modified plans unless it was released from all liability related to the Bond, the Indemnity Agreement and the AHDA. Samost stated that MVE had expected benefits of $4 to $5 million to its property and "[would] not allow the benefits to it to be reduced while remaining liable for any sums under" the agreements. Samost added that he would "permit the modifications to the improvements . . . so long as . . . financial security is posted for the elimination and replacement of those improvements with the permanent improvements shown on the approved plans."

In a cease and desist letter dated April 10, 2008, Samost told plaintiff's attorney that the modified improvements wrongfully deprived MVE of the benefits it had anticipated in order to financially benefit plaintiff. Samost also

11

sent a letter to the Township's attorney notifying him of MVE's objections to the modified improvements.

Noll wrote a letter to the Township Planning & Zoning Office in April 2008 approving modifications and field changes to the site plan. He stated, "such minor modifications and field changes to the plans were in conformance with the Planning Board [r]esolutions that had been adopted in connection with the [p]roject and the [a]ffordable [h]ousing [c]omponent." Noll concluded:

> It is my professional opinion that the modifications and field changes that were approved by me and Medford Township were minimally necessary, and are administrative and are in conformance with the [r]esolutions adopted by the Medford Township Planning Board concerning the [p]roject and the [a]ffordable [h]ousing [c]omponent.

In February 2008, Lexon made an initial $1,047,745 payment to plaintiff under the Bond. In September 2015, Lexon and plaintiff settled the remainder of plaintiff's bond claims by paying an additional $325,285.

## II. Motion Court Decisions.

In January 2008, plaintiff filed a complaint for specific performance and breach of contract against Lexon, which had issued a surety bond to plaintiff. Plaintiff sought to recover the full amount of the bond, over $1.9 million, for costs it had incurred in finishing the infrastructure improvements for the

affordable housing phase of the project. Lexon filed an answer and a separate third-party complaint against MVE, FCD, Freedman and Cohen seeking indemnification.[3] In May 2008, MVE filed an answer to the third-party indemnification complaint and a fourth-party complaint alleging various contractual and tort claims.

On July 25, 2013, the court entered an order granting summary judgment on the third-party complaint in favor of Lexon and against MVE, FCD, Freedman and Cohen, awarding Lexon $1,047,745. On February 21, 2014, the court signed an order denying MVE's motion for reconsideration, and granting the Township's motion for summary judgment on MVE's fourth-party complaint. On November 26, 2014, the court granted plaintiff and Pennoni summary judgment on the fourth-party complaint.

Lexon moved again for summary judgment against MVE in February 2016, based on its settlement with plaintiff for $325,285. On March 18, 2016, a second court signed an order awarding Lexon the amount of its settlement. On December 6, 2016, the second court signed an order granting Lexon $348,806 in counsel fees. On the same date, the second court denied cross-claims for

---

[3] In March 2012, Lexon, Freedman and Cohen, in their individual capacities, reached a settlement agreement on the third-party complaint in which they agreed to pay Lexon $250,000 under the Indemnity Agreement.

A-2040-17T4

contribution and indemnification submitted by MVE, FCD, Freedman and Cohen.

On December 8, 2017, the second court signed an order for final judgment as to all remaining claims. MVE was ordered to pay Lexon $1,684,336, which "include[d] and account[ed] for the [c]ourt's award of attorney's fees and a credit for payments made by the [FCD] defendants," who had settled. Judgment was awarded in favor of MVE and against FCD, Freedman and Cohen. The credits amounted to $1,253,876, leaving MVE with a $430,460 liability to Lexon.

In granting summary judgment to Lexon the first court stated:

> [T]here are no genuine issues of material fact which preclude granting summary judgment . . . . Although the factual background of this matter is complex, the question raised is actually fairly straightforward. Is the general [I]ndemnity [A]greement signed by [MVE] enforceable against it.

As to the Indemnity Agreement, the court found:

> Lexon had the exclusive right to determine for itself and the indemnitors whether any claim or suit brought against Lexon shall be settled or defended. Lexon deemed the letter and lawsuit as such a claim. A loss occurred, because over $1,000,000 was spent in order to fund [the] infrastructure improvements . . . . Thus, all the elements to trigger the indemnitors' obligations were met, e.g., the required work was not performed; there was a demand to complete the work and there was a loss compensable under the [B]ond. There is no

14

question that under the [I]ndemnity [A]greement, MVE is bound by its obligations therein.

The first court also rejected MVE's argument that the changes to the affordable housing project released it from its obligation under the Indemnity Agreement:

> First, there is nothing in the [I]ndemnity [A]greement itself that excuses performance under the indemnity for the modifications in issue. Second, the argument is not persuasive when all of the documents are read in context. The [I]ndemnity [A]greement that MVE signed was limited in scope to the affordable housing component of the project. The [agreement] must be construed in that context. It was a critical portion of the parties' agreement to move forward with the construction of the affordable housing component of the Medford Crossing project.

The court further determined that the Indemnity Agreement contemplated that the scope of the improvements could be modified by the Township engineer alone. The agreement provided that the Township engineer's determination was conclusive and binding on the parties. In addition, the court found that the Township engineer had the authority under the Bond to approve the modifications:

> Although the [B]ond references "approving authority," such general language should yield to the specific language which states "the estimate dated January 15, 2007 and revised February 5, 2007, by the municipal engineer of the cost of this work is attached

15

hereto and made a part hereof." The [B]ond makes specific references to the cost of the project and whether it would exceed the municipal engineer's certified estimate as well as referencing the [AHDA] which references and requires compliance with the estimate.

Finally, the court held that MVE was estopped from challenging the validity of the affordable housing modifications:

> MVE had ample notice of the modifications through its agreement to the [AHDA], [E]asement and [B]ond. Through these documents, it was fully aware of the [e]ngineer's estimate for the affordable housing infrastructure modification. Through its agreement to these documents, it agreed to this process.
>
> . . . .
>
> MVE had more than a year to raise its objections to the modified [sic] of the improvements. The affordable housing component was largely completed before MVE raised objection, although it had signed the [I]ndemnity [A]greement, the [AHDA] and the [B]ond, all of which referenced the engineer's estimate. As such, MVE cannot fairly or equitably raise objection to the affordable housing component improvements or avoid liability under the [I]ndemnity [A]greement.

In denying MVE's motion for reconsideration, the first court added:

> A fair reading of all these documents leads to the conclusion that the [I]ndemnity [A]greement was limited to the [B]ond and the [B]ond to the affordable housing component. The [AHDA] referenced the engineer's estimate. The [B]ond referenced the same estimate. Therefore, there is no question that the

16

> indemnity was for the affordable housing component
> outlined by the township engineer . . . .

The court applied the same reasoning in granting the Township summary judgment.

The first court rejected MVE's request for additional discovery on the claims raised in its fourth-party complaint. The court also rejected MVE's inverse condemnation claim based on a finding in a related case that MVE still had property that could be profitably developed for mixed residential and commercial use to meet its investment backed expectations.

The first court applied the reasoning of its Lexon decision in granting summary judgment to plaintiff and Pennoni on all the counts of MVE's fourth-party complaint. It found that all the counts "arise from and turn on the same common nucleus of facts decided by the [c]ourt" in its Lexon decision.

### III. Issues on Appeal.

### A. Discovery.

MVE argues that the court erred in granting summary judgment to Lexon, as third-party plaintiffs, and to the fourth-party defendants in MVE's fourth-party action against them. It also challenges the denial of its motion for summary judgment, without permitting discovery, especially depositions.

A motion for summary judgment should be granted when, considering the competent evidence presented, "viewed in the light most favorable to the non-moving party," there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Thus, when there is alleged "a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact." Ibid. "[W]hen the evidence 'is so one-sided that one party must prevail as a matter of law,'" summary judgment should be granted. Ibid. (quoting Anderson v. Liberty Lobby Inc., 477 U.S. 242, 252 (1986)).

"[S]ummary judgment . . . normally is not appropriate before the party resisting such a motion has had an opportunity to complete the discovery relevant and material to defense of the motion." In re Ocean County Comm'r of Registration for a Recheck of the Voting Machs., 379 N.J. Super. 461, 478 (App. Div. 2005). A party challenging a motion for summary judgment on that ground, however, "must show . . . 'a likelihood that further discovery would supply . . . necessary information' to establish a missing element in the case." Mohamed v. Iglesia Evangelica Oasis De Salvacion, 424 N.J. Super. 489, 498 (App. Div.

2012) (quoting J. Josephson, Inc. v. Crum & Forster Ins. Co., 293 N.J. Super. 170, 204 (App. Div. 1996)).

MVE fails to specify what information further discovery, including depositions, would reveal to establish a defense to Lexon's third-party complaint against MVE. Moreover, MVE did not request that depositions take place before the summary judgment motions as to Lexon were decided, but rather agreed to an expedited process in a case management order whereby discovery was deferred while those summary judgment motions were heard. See Wellington v. Estate of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003) (holding summary judgment was not premature where opponent did not object to proceeding without discovery and did not allege that there were any material facts in dispute).

## B. Interpretation of the Agreements.

### 1. Suretyship.

"Suretyship is a contractual relation resulting from an agreement whereby one person, the surety, engages to be answerable for the debt, default or miscarriage of another, the principal." Allied Bldg. Prods. Corp. v. J. Strober & Sons, LLC, 437 N.J. Super. 249, 259 (App. Div. 2014) (quoting Eagle Fire Prot. Corp. v. First Indem. of Am. Ins. Co., 145 N.J. 345, 353 (1996)). This

relationship typically "involve[s] three parties: 'an obligee who is owed a debt or duty; a primary obligor, who is responsible for the payment of the debt or performance of the duty; and a secondary obligor, or surety, who agrees to answer for the primary obligor's debt or duty.'" Ibid. (quoting Cruz-Mendez v. ISU/Ins. Servs. of San Francisco, 156 N.J. 556, 568 (1999)). The relationship has been stated as follows:

> A surety, its principal and its indemnitors are engaged in a commercial business relationship which establishes, by contract, specific benefits and burdens to the parties. By issuing its bond, the surety takes the risk that the principal will fulfill its obligations. If the principal does not do so, the surety is required to step in and bear the cost of satisfactorily completing the project and/or paying the principal's subcontractors and suppliers. In order to protect itself from potentially substantial losses, the surety invariably requires the principal and indemnitors to enter into an indemnity agreement.
>
> At the heart of the surety-principal relationship is the intention of the parties—clearly established in the indemnity agreement—that the surety will be repaid for all claims paid or expenses incurred as a result of issuing bonds on behalf of the principal.
>
> [Andre Const. Assoc., Inc. v. Catel, Inc., 293 N.J. Super. 452, 456–57 (Law Div. 1996).]

"[A] surety is chargeable only according to the strict terms of its undertaking and its obligations cannot and should not be extended either by

implication or by construction beyond the confines of its contract." Eagle Fire Prot. Corp., 145 N.J. at 356 (quoting Monmouth Lumber Co. v. Indemnity Ins. Co., 21 N.J. 439, 452 (1956)). However, if the language in the bond is ambiguous, it should be liberally construed in favor of the principal. Ibid.

> Generally, when an indemnity agreement gives a surety broad discretion to pay claims triggering the indemnity agreement, the only defense that an indemnitor may raise against a claim by the surety for indemnification is that the surety committed fraud or collusion or otherwise acted in bad faith in paying the claim.
>
> [74 Am. Jur. 2d Suretyship § 122 (2019).]

Because a suretyship implicates a contractual relationship, the construction of its terms is a question of law for the court. Kieffer v. Best Buy, 205 N.J. 213, 222–23 (2011). "The interpretation of the terms of a contract are decided by the court as a matter of law unless the meaning is both unclear and dependent on conflicting testimony." Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 92 (App. Div. 2001). Similarly, an indemnification contract should be interpreted the same way as other contracts. Cozzi v. Owens Corning Fiber Glass Corp., 63 N.J. Super. 117, 121 (App. Div. 1960). "Cases involving contract interpretations are particularly suited to disposition by summary

judgment." CSFB 2001-CP-4 Princeton Park Corp. Ctr., LLC v. SB Rental I, LLC, 410 N.J. Super. 114, 119 (App. Div. 2009).

"In ruling on a summary judgment motion that involves the interpretation of a contract, a court must necessarily determine whether there is any genuine issue of material fact regarding the parties' intentions," such as uncertainty, ambiguity or the need for testimony. Celanese Ltd. v. Essex Cnty. Improvement Auth., 404 N.J. Super. 514, 528 (App. Div. 2009). The court should rely on "the language used, the situation of the parties, the attendant circumstances, and the objectives the parties were striving to attain." Ibid. Where a contract's terms are clear and unambiguous, the contract will be enforced as written. See B.D. v. Div. of Med. Assistance & Health Servs., 397 N.J. Super. 384, 391 (App. Div. 2007). To ascertain the intention of the parties, and to determine whether an ambiguity exists, a court may consider extrinsic evidence to support the conflicting interpretations. Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 269 (2006).

### 2. "Approving Authority" Under the Agreements.

MVE contends that the court erred in determining that the bond term "approving authority" referred to the Township engineer and not to the Planning Board. MVE also asserts that the modified plans had to be presented to and

approved by the Planning Board to be effective in order for MVE to have received due process. As the motion court found, no requirement in the Bond, Indemnity Agreement or Easement required that any changes reducing the scope of the work be approved by the Planning Board.

The Bond guaranteed "full and faithful completion of the improvements approved by the approving authority." The Bond also stated that extensions may be allowed by the approving authority, and further provided:

> In the event that the principal and the approving authority agree to changes in the scope of the work, the obligations of the surety under this [B]ond shall not be affected so long as the cost of the work does not exceed 120 percent of the municipal engineer's certified estimate . . . .

The term "approving authority" is defined by N.J.S.A. 40:55D-3 as a municipality's planning board, unless otherwise designated by ordinance. While the Bond does not define "approving authority," or reference the statute, it refers to MCS as having received "preliminary approval by the Planning Board of Medford Township." When read as a whole, the Bond's reference to "approving authority" is clearly a reference to the Planning Board. See Hardy v. Abdul-Matin, 198 N.J. 95, 103 (2009).

The Bond specifically referenced the Township engineer's estimate, and incorporated it by reference. Any changes in the scope of the work would only

affect Lexon's obligations under the Bond if the cost of the work exceeded 120 percent of the Township engineer's certified estimate, which did not occur. There was no requirement that the approving authority formally approve any changes to the scope of the affordable housing portion of the project.

In addition, the Easement signed by MVE in conjunction with the Bond and the Indemnity Agreement, provided that if MVE and plaintiff could not agree as to which of the infrastructure improvements were "necessary and appropriate" for the affordable housing project, the Township engineer was authorized to make the "conclusive and binding" determination. The Planning Board was not given sole authority over approval of changes to the affordable housing project. See Allied Bldg. Prods., 437 N.J. Super. at 261–62 ("We may not ignore the general design of the agreement in ascertaining the sense of particular terms, even one so central as the identity of the obligee."). Similarly, the general design of the agreements make clear the Township engineer was authorized to approve changes to the affordable housing plan and approval to such changes by the Planning Board, where the scope and cost of the plan was reduced, was not required.

"[T]wo or more writings which are all parts of one transaction relating to the same subject matter, are to be read and interpreted as one instrument,

whether or not they refer to each other." <u>Wellmore Builders, Inc. v. Wannier</u>, 49 N.J. Super. 456, 463 (App. Div. 1958). The importance of these provisions in these instruments, in light of the agreement between the Township and plaintiff to reduce the scale of the affordable housing project, is that MVE's knowledge and consent was not a prerequisite to the enforceability of the plan modification. Nor did plaintiff and the Township act improperly by modifying the plans. The only prohibition under the agreements was that the modification not exceed 120 percent of the estimated cost. Moreover, contrary to MVE's claim, Lexon and plaintiff did not agree to a modification of the Bond itself. Rather, plaintiff and the Township agreed to narrow the scope of the affordable housing project.

MVE's obligations under the Indemnity Agreement were not nullified by plaintiff's agreement with the Township to modify the scale of the affordable housing project.

### 3. Consideration.

MVE also contends that the court erred in determining that consideration for the execution of the Indemnity Agreement was merely one dollar without considering parol evidence that the consideration also included an anticipated

$4 to $5 million increase in the value of the property resulting from the development. We disagree.

In granting summary judgment to Lexon, the first court stated:

> MVE contends that the consideration for the [I]ndemnity [A]greement was $4 to 5 million dollars in improvements to the overall development . . . that it says it did not receive. However, the [I]ndemnity [A]greement provides for consideration of $1 and execution of the [B]ond, not millions of dollars in consideration as MVE alleges. Further, the [I]ndemnity [A]greement clearly states that there are no separate agreements that alter the obligations between the contracting parties. . . . unless in writing. . . . As such, MVE's consideration for the [I]ndemnity [A]greement was the execution of the . . . [B]ond and $1.00. There was no other consideration under the [I]ndemnity [A]greement. The agreement was never modified.

"In general, contracts are enforceable only if they are supported by consideration." Sipko v. Koger, Inc., 214 N.J. 364, 380 (2014). The sufficiency of the "consideration does not depend upon the comparative value of the 'things' exchanged." Seaview Orthopaedics v. Nat'l Healthcare Res., Inc., 366 N.J. Super. 501, 509 (App. Div. 2004). The consideration need only "be valuable in the sense that it is something that is bargained for in fact." Ibid. (quoting Borbely v. Nationwide Mut. Ins. Co., 547 F. Supp. 959, 980 (D.N.J. 1981)). MVE received the benefit of the Bond as consideration. The Bond permitted

work on the site to commence.  Thus, MVE received something of value in return for its promise to indemnify Lexon.

### C.  Counsel Fees.

MVE claims that the court erred by awarding Lexon counsel fees without a detailed evaluation of the reasonableness of the fees and a statement of reasons.  We agree.

In awarding counsel fees, the court must determine the lodestar, "which equals the 'number of hours reasonably expended multiplied by a reasonable hourly rate,'" based on various factors as to the reasonableness of the rate and the hours expended.  Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21–23 (2004) (quoting Rendine v. Pantzer, 141 N.J. 292, 335 (1995)).  In order to permit proper appellate review, the court must state its reasons for awarding the particular fee, including how it analyzed the reasonableness factors.  Id. at 21.

In its July 2013 order, the first court initially determined that Lexon was entitled to counsel fees under the Indemnity Agreement, but made no award.  In its December 6, 2016 order, the second court awarded Lexon $348,806 in counsel fees and costs, and wrote that the "fees are reasonable, sufficiently detailed, and the methods utilized for the billing are also reasonable."  No statement of reasons was issued beyond that.  Thus, it cannot be determined

A-2040-17T4

whether the trial court properly applied the factors as to reasonableness. We reverse and remand for reconsideration and enhanced reasoning.

### D. Fourth-Party Defendants.

MVE also argues that the court erred in granting plaintiff summary judgment because it did not address causes of action MVE had raised beyond the Indemnity Agreement. MVE also claims that the court erred in granting summary judgment to the Township and Pennoni solely based on its determination that summary judgment was properly granted as to Lexon.

We reverse the summary judgment grants in favor of these defendants because discovery was incomplete, and most of the claims raised by MVE in the fourth-party complaint are separate and apart from the question of whether MVE was required to reimburse Lexon under the Bond and the Indemnity Agreement.

In its fourth-party complaint, MVE alleged breach of the Easement by plaintiff as a result of the change in construction plans; tortious interference with business relationship against plaintiff and the Township because of their failure to comply with the Easement; conversion against plaintiff and Pennoni to compel the turnover of the engineering plans; breach of fiduciary duty against the Township and Pennoni based on the changes to the project plans; trespass against plaintiff and Pennoni requiring removal of the improvements

constructed; intentional tort against plaintiff, the Township and Pennoni based on the changed plans; breach of contract and of implied contract, conspiracy, fraud, and lack of good faith and fair dealing against all fourth-party defendants based on the change of plans; specific performance against plaintiff and the Township of certain condemnation agreements; and inverse condemnation against the Township based on the changed plans. Summary judgment dismissing MVE's claims was premature as fourth-party defendants had not agreed to defer discovery and a number of the counts, including intentional tort and contractual claims, were distinct from the question of whether MVE was required to indemnify Lexon.

While these counts are related to Lexon's claims in the sense that they stem from the dispute over the changed affordable housing plans, the claims are separate from the question of whether MVE was required to indemnify Lexon, which was the basis of the third-party complaint. Because the first court rejected MVE's request for additional discovery as to these fourth-party claims, the record and evaluation of the merits of the claims are incomplete, and whether there are disputed issues of material fact is impossible to evaluate.

We affirm the grant of summary judgment to Lexon on its third-party complaint for indemnification, but reverse its counsel fee award and remand for

29

reconsideration and findings. We reverse the court's grant of summary judgment to the Township, plaintiff and Pennoni on MVE's fourth-party complaint.

Affirmed in part and reversed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2040-17T4